**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maritza Suarez Gomez, | CIV 13-800-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Maritza Suarez Gomez's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

In August 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning July 14, 2008. (Transcript of Administrative Record ("Tr.") at 33, 213-23.) Her applications were denied initially and on reconsideration. (Tr. at 84-100.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 101-02.) A hearing was held on December 9, 2011, (Tr. at 56-83), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 27-48). The Appeals Council denied Plaintiff's request for review (Tr. at 1-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 14, 2008 – the alleged onset date. (Tr. at 35.) At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, arthritis, and headaches. (Tr. at 35.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 36-37.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should not climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs and can occasionally balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to unprotected heights."[1] (Tr. at 37-40.) The ALJ determined that Plaintiff is capable of performing past relevant work as an elementary school teacher, a kitchen food assembler, and a housekeeper cleaner. The ALJ stated that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. at 40-41.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from July 14, 2008, through the date of his decision. (Tr. at 41-42.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; (2) failing to properly weigh medical source opinion evidence; and (3) finding that Plaintiff could perform other sedentary jobs despite her limited ability to speak English. Plaintiff requests that the Court remand for determination of benefits.

### A.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted).  General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495

1  F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and
2  observations of treating and examining physicians and other third parties regarding, among
3  other matters, the nature, onset, duration, and frequency of the claimant's symptom;
4  precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
5  ... ."  Smolen, 80 F.3d at 1284 (citation omitted).

6  Plaintiff was represented by counsel during the December 2011 administrative
7  hearing. (Tr. at 56.) She testified that she graduated from college in Cuba, where she studied
8  to be a teacher. (Tr. at 62.) Plaintiff last worked as an electrician's assistant in 2009, but
9  stopped working because she was laid off. (Tr. at 63, 65.) She stated that she attended two
10 English classes at a local college and was able to speak "very basic" English. (Tr. at 67-68.)
11 With respect to her back problems, Plaintiff stated that injections had been helpful in treating
12 her pain in the past. (Tr. at 69-70.) She admitted that doctors had told her that surgery was
13 necessary for her back impairment, but said that she wanted to wait for surgery until her
14 mother was able to come from Cuba. (Tr. at 70.) Plaintiff was using a cane to walk although
15 she acknowledged that it had not been prescribed by a doctor. (Tr. at 70.) Plaintiff testified
16 that she was able to sit for 30 minutes, stand for 30-40 minutes, and walk for five minutes.
17 (Tr. at 70-71.)

18 Having reviewed the record along with the ALJ's credibility analysis, the Court finds
19 that the ALJ made extensive credibility findings and identified several clear and convincing
20 reasons supported by the record for discounting Plaintiff's statements regarding her pain and
21 limitations. Although the ALJ recognized that Plaintiff's medically determinable
22 impairments could reasonably be expected to cause the alleged symptoms, he also found that

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

1    Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
2    symptoms were not fully credible. (Tr. at 37-40.)

3          Initially, the ALJ discussed the objective medical evidence finding that Plaintiff's
4    assertions about extreme limitations in functioning were inconsistent with her medical
5    records. (Tr. at 37-40.) The ALJ specifically cited to records showing that Plaintiff's gait
6    was generally found to be normal and that she retained full strength and sensory function in
7    her extremities and normal neurological function. (Tr. at 37-38, 312-21, 428-41, 476-88.)
8    Further, the ALJ noted that MRI studies demonstrated only moderate to mild bulging and
9    narrowing through the lumbar spine. (Tr. at 38-39, 312-21, 478-79.) Straight leg raise tests
10   were generally negative, indicating limited or no involvement of the spinal nerve roots. (Tr.
11   at 38-39, 428-41, 476-77.) And, importantly, the ALJ observed that no treating physician
12   issued an opinion indicating that Plaintiff was disabled, or even assessed her with any
13   functional limitations. (Tr. at 40.) Based on the objective medical evidence, and the lack of
14   any medical source opinion corroborating Plaintiff's claims of disabling limitations, the ALJ
15   reasonably concluded that Plaintiff's subjective complaints were inconsistent with the
16   medical record as whole. See 20 C.F.R. § 404.1529(c)(4) (ALJ must consider
17   inconsistencies in the evidence, including conflicts between a claimant's statements and
18   statements by treating sources); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
19   599-600 (9th Cir. 1999) (finding ALJ provided clear and convincing reasons for rejecting
20   claimant's testimony by citing, in part, contrary objective evidence); Green v. Heckler, 803
21   F.2d 528, 531 (9th Cir. 1986) (noting that, while a number of treating doctors had evaluated
22   or commented on the claimant's functioning, no doctor concluded that the claimant was
23   disabled).

24         Next, the ALJ found that medications had been relatively effective in controlling
25   Plaintiff's symptoms. (Tr. at 38-40.) The ALJ documented multiple instances wherein
26   Plaintiff was doing well and her pain had been somewhat resolved. (Tr. at 38-40, 417-27,
27   452-77, 527-48, 515-26.) For example, in February 2011, Plaintiff reported to Minesh
28   Zaveri, D.O., that she had received "excellent benefit" from the recent epidural injection, and

1  that her pain ranged from "zero to 5" out of a possible 10. (Tr. at 38, 527-48.) Dr. Minesh
2  felt that she was "making excellent progress" and discontinued her pain medication
3  (Percocet) because she was not using it. (Tr. at 38, 527-48.) In April 2011, Plaintiff told Dr.
4  Minesh that her pain was a five out of a possible 10, that her activities of daily living were
5  improved, and that "70%" of her pain was resolved. (Tr. at 38, 527-48.) Two months later,
6  Plaintiff was using Percocet "sparingly without side effects," and she rated her pain as "0-2"
7  out of a possible 10. (Tr. at 39, 527-48.) In August 2011, the ALJ reported that Plaintiff had
8  a medial branch nerve block, which gave her "100% resolution of her pain for one day." (Tr.
9  at 39, 515-48.) Plaintiff had multiple back ablations in September 2011, (Tr. at 39, 515-26),
10 and she reported excellent pain relief as a result (Tr. at 39, 527-48). The ALJ reasonably
11 considered this evidence in concluding that Plaintiff's symptoms were generally
12 well-controlled through medication, were not as severe as she alleged, and would not
13 preclude all work activity. See 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ must consider the
14 type and effectiveness of treatment); id. § 404.1529(c)(4) (ALJ must consider inconsistencies
15 in the evidence); Morgan, 169 F.3d at 599-600 (finding ALJ provided clear and convincing
16 reasons for rejecting claimant's testimony by citing, in part, contrary objective evidence); see
17 also Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir.
18 2006) (holding that "[i]mpairments that can be controlled effectively with medication are not
19 disabling").

20        The ALJ also noted several issues regarding Plaintiff's work history that reflected
21 poorly on her credibility. (Tr. at 39.) For instance, the ALJ observed that Plaintiff received
22 unemployment benefits from January 2009 through January 2010, during which time she was
23 required to apply for jobs and hold herself out as able to work, which was inconsistent with
24 her claim of total disability. (Tr. at 39.) The ALJ also noted that Plaintiff testified that she
25 stopped working in 2009, not due to her impairments, but because she was "laid off." (Tr.
26 at 39, 63, 65.) The ALJ specifically observed that there was no evidence of a significant
27 deterioration in Plaintiff's condition since 2009, indicating that her impairments would not
28 prevent her from performing the job she previously performed with those same impairments.

1  (Tr. at 39.)  These factors contributed to the ALJ's determination that Plaintiff was capable
2  of more work activity than she admitted.  See 20 C.F.R. § 404.1529(c)(3) (stating an ALJ
3  must consider evidence about a claimant's prior work record); Elletson v. Astrue, 319 F.
4  App'x 621, 622 (9th Cir. 2009) (unpublished) (fact that claimant previously worked at a
5  physically demanding job and left that job for reasons unrelated to her impairment was a
6  clear, and convincing reason for rejecting claimant's testimony); Gregory v. Bowen, 844
7  F.2d 664, 667 (9th Cir. 1988) (upholding finding that the claimant's back problems were not
8  disabling where that impairment had "remained constant for a number of years and ... had
9  not prevented her from working over that time").

10  Further, the ALJ also specifically found that Plaintiff's daily activities were not as
11  limited as one might expect, given the severity of symptoms that she alleged.  (Tr. at 39-40.)
12  The ALJ observed that Plaintiff was able to cook, wash dishes, do laundry, clean, and go
13  shopping.  (Tr. at 39, 262-64.)  The ALJ also noted Plaintiff's report to a treating physician
14  that she was able to perform all activities of daily living and function independently.  (Tr. at
15  38, 428-41.)  The ALJ reasonably found that Plaintiff's activities were generally inconsistent
16  with her claim that she was completely unable to function in a work environment.  See 20
17  C.F.R. § 404.1529(c)(3)(i) (ALJ must consider evidence of activities); Berry v. Astrue, 622
18  F.3d 1228, 1234 (9th Cir. 2010) (ALJ properly discredited claimant by identifying
19  contradictions between his complaints in an activity questionnaire, his hearing testimony, and
20  some of his other self-reported activities).

21  Lastly, the ALJ noted that Plaintiff was terminated from physical therapy due to her
22  non-compliance and failure to attend her appointments, which reflected poorly on her
23  motivation to improve her condition.  (Tr. at 39, 353-70.)  Plaintiff argues that she was forced
24  to stop physical therapy because it exacerbated her symptoms.  However, the record shows
25  that Plaintiff only attended two physical therapy sessions before she unilaterally decided to
26  quit, and her physicians continued to recommend that she return to physical therapy for
27  several years.  (Tr. at 452-77.)  The ALJ reasonably concluded that such evidence tended to
28  show that Plaintiff was not fully motivated to improve her condition.  See 20 C.F.R. §

1   404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence); <u>Greger v.</u>
2   <u>Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (claimant's failure to participate in a planned
3   cardiac rehabilitation program was a clear and convincing reason for rejecting his testimony).

4          In sum, the ALJ cited extensively to the record, identifying multiple inconsistencies
5   that undermined the veracity of Plaintiff's allegations.  While perhaps the individual factors,
6   viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's
7   allegations, each factor is relevant to the ALJ's overall analysis, and it was the cumulative
8   effect of all the factors that led to the ALJ's decision.  The Court concludes that the ALJ has
9   supported his decision to discredit Plaintiff's allegations with specific, clear and convincing
10  reasons and, therefore, the Court finds no error.

11  **B.   Medical Source Opinion Evidence**

12         Plaintiff contends that the ALJ erred by failing to properly weigh medical source
13  opinion evidence.  Specifically, Plaintiff argues that the ALJ "erred by assessing Gomez's
14  work capacities unsupported by substantial evidence in this record, that is, by adopting the
15  opinion of a state agency physician who reviewed a limited record as part of the initial
16  determination, who based his opinion on a record review only, without benefit of a personal
17  examination."

18         "The ALJ is responsible for resolving conflicts in the medical record."  <u>Carmickle v.</u>
19  <u>Comm'r, Soc. Sec. Admin.</u>, 533 F.3d at 1164.  Such conflicts may arise between a treating
20  physician's medical opinion and other evidence in the claimant's record.  In weighing
21  medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
22  types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
23  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
24  who neither treat nor examine the claimant.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  Generally, more
25  weight is given to a treating physician's opinion.  <u>See id.</u>  The ALJ must provide clear and
26  convincing reasons supported by substantial evidence for rejecting a treating or an examining
27  physician's uncontradicted opinion.  <u>See id.</u>; <u>Reddick</u>, 157 F.3d at 725.  An ALJ may reject
28  the controverted opinion of a treating or an examining physician by providing specific and

1  legitimate reasons that are supported by substantial evidence in the record. See Bayliss v.
2  Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Reddick, 157 F.3d at 725.

3  Opinions from non-examining medical sources are entitled to less weight than treating
4  or examining physicians. See Lester, 81 F.3d at 831. Although an ALJ generally gives more
5  weight to an examining physician's opinion than to a non-examining physician's opinion,
6  a non-examining physician's opinion may nonetheless constitute substantial evidence if it
7  is consistent with other independent evidence in the record. See Thomas v. Barnhart, 278
8  F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may
9  consider "the amount of relevant evidence that supports the opinion and the quality of the
10 explanation provided; the consistency of the medical opinion with the record as a whole;
11 [and] the specialty of the physician providing the opinion ... ." Orn v. Astrue, 495 F.3d at
12 631.

13 Initially, the Court notes that no physician opined that Plaintiff was unable to work.
14 In his evaluation of the objective medical evidence, the ALJ considered opinions from
15 reviewing State agency physicians Christopher Maloney, M.D., and Mikhail Bargan, M.D.
16 (Tr. at 40, 404-11, 445.) Both physicians opined that Plaintiff retained abilities consistent
17 with light work, including the ability to lift 20 pounds occasionally and 10 pounds frequently,
18 and the ability to sit, stand, or walk for six hours each in an eight-hour work day. (Tr. at 404-
19 11, 445.) The ALJ reasonably gave weight to these opinions, (Tr. at 40), which were
20 consistent with the objective medical evidence of record (discussed in the ALJ's evaluation
21 of Plaintiff's subjective complaints of pain and limitations) demonstrating that Plaintiff had
22 a normal gait, normal strength and sensation in all of her extremities, normal neurological
23 function, only moderate to mild degenerative disc disease, and pain and symptoms that were
24 well-controlled through medication and injections. (Tr. at 37-40, 312-21, 428-41, 452-76,
25 478-88, 515-26, 527-48.) The opinions of the State agency physicians were also consistent
26 with Plaintiff's reports of her own abilities, (Tr. at 37-40, 428-41, 527-48, 262-64.)

27 In his decision, the ALJ specifically stated:

28

> As for the opinion evidence, no treating physician issued an opinion that the claimant is disabled. The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services supported a finding of 'not disabled.' (7F; 8F; 14F; 15F) Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exists a number of other reasons to reach similar conclusions (as explained throughout this decision).

(Tr. at 40.)

In sum, the ALJ reasonably gave weight to Dr. Maloney's and Dr. Bargan's opinions, which consistent with the other evidence of record, provided substantial evidence in support of the ALJ's residual functional capacity assessment. See 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Thomas, 278 F.3d at 957 (reviewing source opinion may constitute substantial evidence where it is consistent with independent clinical findings or other evidence of record). Therefore, the Court finds no error.

**C.     The ALJ's Alternate Finding at Step Five**

Plaintiff argues that the ALJ's alternate finding that Plaintiff could perform other sedentary jobs was foreclosed by Plaintiff's limited ability to speak English. Here, however, the ALJ was not required to reach Step Five of the sequential evaluation, because he determined that Plaintiff was not disabled at Step Four and found that Plaintiff is capable of performing her past relevant work. See 20 C.F.R. § 404.1520(a)(4) ("[i]f we can find that you are disabled or not disabled at a step, we make our determination and decision and we do not go on to the next step."). Thus, any argument that the ALJ erred at Step Five is without merit.

"[A] claimant will be found to be 'not disabled' when it is determined that he or she retains the residual functional capacity to perform: 1. the actual functional demands and job duties of a particular past relevant job; *or* 2. the functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1; see 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)(2). A

1   claimant's residual functional capacity is the sole consideration in determining whether she
2   can perform her past relevant work, and vocational factors such as age, education, and work
3   experience are not part of that analysis. See 20 C.F.R. § 404.1560(b)(3).

4   As set forth above, the ALJ properly determined Plaintiff's residual functional
5   capacity based on his evaluation of all evidence of record. (Tr. at 37-40.) The ALJ then
6   solicited testimony from a vocational expert regarding Plaintiff's past relevant work. (Tr.
7   at 77-80.) See 20 C.F.R. § 404.1560(b)(2) (ALJ may rely on expert testimony to determine
8   whether a claimant can perform her past relevant work); Matthews v. Shalala, 10 F.3d 678,
9   681 (9th Cir. 1993) (holding that a vocational expert's testimony is useful at step four, but not
10  required). The vocational expert classified Plaintiff's past work as elementary school teacher
11  as light and skilled, and her past work as a kitchen foods assembler and housekeeping cleaner
12  as light and unskilled. (Tr. at 78.) Based on the expert's classification of Plaintiff's past
13  work, the ALJ determined that Plaintiff's past work as an elementary school teacher, kitchen
14  foods assembler, and housekeeping cleaner, as those jobs are actually and generally
15  performed, did not exceed her residual functional capacity. (Tr. at 40-41.) Because Plaintiff
16  did not meet her burden of showing an inability to do the type of work she had done in the
17  past, the ALJ properly found she was not disabled. The Court finds no error with regard to
18  the ALJ's Step Four analysis.

19  Since the Court finds that substantial evidence supports the ALJ's Step Four finding
20  that Plaintiff could perform her past relevant work, any alleged error with regard to the ALJ's
21  Step Five determination is moot or harmless. See Kimmel v. Astrue, 2012 WL 680332, at
22  *4 (C.D. Cal. Mar. 1, 2012) (unpublished) (holding that "[s]ince the Court finds no error with
23  regard to the Step Four analysis, the issue concerning alleged error with regard to the Step
24  Five process is effectively mooted"); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d
25  1050, 1055 (9th Cir. 2006) (error is harmless when it occurs in a step the ALJ was not
26  required to perform); Matthews, 10 F.3d at 681 (any error in hypothetical was harmless in
27  light of the Step Four conclusion that claimant could return to past work).
28  \\\

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 29th day of August, 2014.

*[signature: Michelle H. Burns]*

Michelle H. Burns
United States Magistrate Judge